UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| RICHARD O. STEVENS, Trustee of The Gloria S. Stevens Trust, and Named Executor of the Gloria S. Keesey Stevens Estate,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | No. 05-03967 SC<br><br>ORDER DENYING DEFENDANT'S MOTION <u>FOR SUMMARY JUDGMENT</u> |

## I.  **INTRODUCTION**

Plaintiff Richard O. Stevens, Trustee of the Gloria S. Stevens Trust, and Named Executor of Gloria S. Keesey Stevens Estate ("Plaintiff" or "Estate"), filed this action against Defendant United States of America ("Defendant" or "Government"), under 28 U.S.C. § 1346, 26 U.S.C. §§ 7422 and 6511, claiming a refund of $65,481.89 in overpaid estate taxes.

Defendant now moves for summary judgment on the sole ground that under 26 U.S.C. § 6511(b)(2)(A), Plaintiff submitted its refund claim to the Internal Revenue Service ("IRS") too late to reach any overpayment remitted on November 16, 1998.  Defendant's Memorandum in Support of Motion for Summary Judgment at 3 ("Def.'s Mem.").  For the reasons stated herein, the Court DENIES Defendant's motion WITHOUT PREJUDICE to either party's right to file a similar motion after discovery has been conducted.

**II.  BACKGROUND**

The following basic facts are uncontested.  On February 16, 1998, Plaintiff's mother, Gloria Stevens, passed away.  Plaintiff Richard O. Stevens' Declaration in Support of Opposition to Government's Motion for Summary Judgment at 2 ("Pl.'s Decl.").  Thus, unless granted an extension, the Estate was required to file a Form 706 United States Estate Tax Return by November 16, 1998.  Id., Ex. A.

On that date, Plaintiff sent the IRS a completed Form 4768 Application for Extension to File a Return, along with a check for $162,109.58, the amount Plaintiff listed on the form's line for the "[a]mount of estate and GST taxes estimated to be due."  Id.  The IRS granted Plaintiff a six month extension, setting May 16, 1999 as the new deadline for filing.  Id. at 2.

Plaintiff, however, did not file the return until July 30, 2002.  Id., Ex. B at 1.  The return claimed a "refund payable to: Richard O. Stevens, Trustee Gloria S. Stevens Trust, of $65,481.89."  Id.

On October 3, 2003, the IRS sent a letter to Plaintiff, denying his refund claim.  Id., Ex. D.  The letter stated the following reason for the denial:

> You filed your return late, more than 3 years after the due date. Your return showed an overpayment.  In order to claim that overpayment as a refund or credit, the law requires you to file your return on time, within 3 years from its due date.

2

Id. at 1.[1]  On September 30, 2005, Plaintiff filed the instant complaint in this Court.

In addition to the uncontested official contacts between the IRS and Plaintiff detailed above, Plaintiff also asserts a series of less formal contacts between himself or another in his family and the IRS, Complaint of Richard O. Stevens, Trustees of The Gloria S. Stevens Trust, and Named Executor of Gloria S. Keesey Stevens Estate at 2 ("Compl."), which the Government denies. Answer of the United States of America at 2 ("Answer").  For the purpose of evaluating Defendant's motion, the Court accepts as true evidence Plaintiff presents in these assertions' support. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The first informal contact occurred on May 13, 1999, three days before the Official Extension expired; Plaintiff's wife, Joan Stevens, called "Mr. Richmond (IRS employee ID #4163)."  Pl.'s Decl. at 2.  In the course of the conversation, Ms. Stevens told Mr. Richmond that the Estate "had largely overpaid the tax on 11/16/98, and fully expected a refund."  Id.  Mr. Richmond told her in response "that the estate would not suffer any loss in any way so long as the total tax due had already been paid."  Id. Notes taken by Ms. Stevens during the call appear to reflect further statements by Mr. Richmond that while no additional

---

[1] This reason misstates the law in effect at the time and currently, Omohundro v. United States, 300 F.3d 1065, 1068 (9th Cir. 2002)(abrogating Miller v. United States, 38 F.3d 473 (9th Cir. 1994), and established that filing a return late does not foreclose a taxpayer's opportunity under Section 6511(a) to file a refund claim within 3 years of the date the return was filed). The reason no longer forms a basis for the Government's arguments. Def.'s Mem.

United States District Court
For the Northern District of California

1  extensions of the filing deadline were supposed to be allowed, the
2  estate could try sending a letter "to Fresno office," explaining
3  the circumstances and requesting more time.  Id., Ex. E.  There is
4  no indication the Estate ever sent such a letter.

5      On January 28, 2002, Plaintiff received a letter "from IRS
6  Revenue Officer Nancy Wong Identification No. 68-11603 . . .
7  asking to meet with [Plaintiff] to discuss [Plaintiff's] failure
8  to yet file the 706 return."  Id. at 3.[2]

9      In response to the letter, Plaintiff made two calls to IRS
10 Officer Wong, on February 11, 2002 and April 25, 2002.  Id. at 3-
11 4.  In the course of these calls, Plaintiff explained to Officer
12 Wong that the family had experienced a string of tragic events,
13 including the sequential deaths of "our father, mother, sister,
14 and uncle (each of whom lived in our family home)," all of whom
15 "had very long term healthcare cancer problems preceding their
16 deaths" and were cared for at home.  Id. at 4.  Plaintiff also
17 explained how, in addition, his "brother had prostate cancer and
18 surgery therefor," part of the family's business had suffered a
19 "major fire" and thus had closed, while the business's other part
20 "was in severe decline."  Id.  Plaintiff further informed Officer

---

[2] Plaintiff's Declaration lists two other written communications from the IRS that the Estate received prior to the Official Extension's expiration.  Both informed the Estate that it had a "credit balance of $162,109" and attached forms on which the Estate was asked to indicate how it would like to deal with the credit.  Pl.'s Decl. at 2.  The forms included an option for the taxpayer to choose that stated: "I want a refund of the credit balance."  Id., Exs. F-1B, F-2B.  Plaintiff did not complete and return either form because he could not find an option on the forms which reflected his intent to file a return later, have part of the credit applied to satisfy his then determined liability, and the remainder refunded.  Id. at 3.

4

Wong that "the estate had greatly overpaid any estate tax that would ultimately be found due . . . and we were expecting a refund for any unused credit which the estate had paid on account." Id. On these bases, Plaintiff "requested additional time to file the 706 with its formal refund claim." Id. In response, "Ms. Wong acknowledged [Plaintiff's] statements and said she would wait until 5/31/02 to receive the 706 return." Id.

On May 29, 2002, Plaintiff sent Officer Wong a letter in which he thanked her for "extending the time to file the death tax return . . . to May 31, 2002," but, as a result of the recent death of Plaintiff's sister, requested a further extension to July 31, 2002. Id., Ex. C. The letter also stated: "Please remember that we have already made substantial prepayment on account and anticipate receiving a refund." Id. Officer Wong sent a postcard in response, acknowledging that she would "wait for form 706 until 7/31/02." Id., Ex. G.

In light of this series of communications with Mr. Richmond and Officer Wong, Plaintiff states that he was "surprised," when he subsequently received the IRS's denial of his refund claim. Id. at 5. In particular, he notes "previous assurances . . . [by] IRS employees . . . that there would be no penalties whatsoever for filing a late return so long as the estate had already fully paid its tax liability," the agreement worked out with Officer Wong "to obtain extensions until 7/31/2002 to file the 706 return," and the failure by both Officer Wong and Mr. Richmond to "advise[] [the Estate] that the estate had a right to refund claim only if filed within 3 years of the return due date." Id. at 5-6.

5

1  Together these actions, Plaintiff states, "lulled [him] into a
2  sense of complacency and lack of urgency." Id.
3    Regarding all of the oral communications between the Estate
4  and IRS employees just described, Plaintiff states each was
5  "contemporaneously documented in writing by the IRS agents, in
6  their files, both formal and informal, and by computer entries,
7  during our telephone conversations." Id. at 1.

### III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 247-48 (1986).

The moving party "always bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 377 U.S. 317, 323 (1986). The non-moving party, in turn, "must set forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e). However, "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment."

6

1  F.R.C.P. 56(f).  Further, whatever evidence the non-moving party

2  submits "is to be believed, and all justifiable inferences are to

3  be drawn in its favor."  Anderson, 477 U.S. at 255.  Ultimately,

4  "summary judgment will not lie if the dispute about a material

5  fact is 'genuine,' that is, if the evidence is such that a

6  reasonable jury could return a verdict for the nonmoving party."

7  Id. at 248.

8  **IV.  DISCUSSION**

9  Both parties agree that the sole issue in this case is the

10 application of the look-back provision of Section 6511(b)(2)(A).

11 See Def.'s Mem. at 3; Plaintiff's Memorandum in Opposition to

12 Government's Motion for Summary Judgment at 2 ("Pl.'s Mem.").[3]

---

[3] Though neither party has raised the issue, the court notes the Ninth Circuit Court of Appeals has held Section 6511(b)(2)(A) "is jurisdictional." Zeier v. IRS, 80 F.3d 1360, 1364 (9th Cir. 1996).  Zeier does not discuss the basis for this holding except a citation to Comm'r of Internal Revenue v. Lundy,[516 U.S. 235, 238-241], 116 S. Ct. 647, 650-51 (1996), and the court's only subsequent holding in accord, an unpublished opinion, is similarly opaque. Bhatacharya v. Internal Revenue Comm'r, No. CV-04-015632006 WL 1381608 (9th. Cir., May 15, 2006).

In Comm'r of Internal Revenue v. Lundy, the Supreme Court noted, with reference to 26 U.S. § 7422(a), that "provisions governing refund suits in United States District Court or United States Court of Claims . . . make timely filing of a refund claim a jurisdictional prerequisite to bringing suit. 516 U.S. 235, 241 (1996)(emphasis added).  Section 7422(a) states: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422(a).

Internal Revenue Code, Sections 6511(a) and 6532 govern whether a claim for refund or credit taxes paid is timely filed. 26 U.S.C. § 6511(a)("Claim for credit or refund of an overpayment of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within two years from the time the tax was paid."); 26 U.S.C. § 6532(a)(1) ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6

7

1      Section 6511(b)(2)(A) limits the amount of money a refund
2 claim timely filed under Section 6511(a) may seek, according to
3 how long after an overpayment the refund claim is filed:
4    If the claim was filed by the taxpayer during the 3-year
     period prescribed by section (a), the amount of the
5    credit or refund shall not exceed the portion of tax
     paid within the period, immediately preceding the filing
6    of the claim, equal to 3 years plus the period of any
     extension of time for filing the return.
7
  26 U.S.C. § 6511(b)(2).
8
9      The Government argues application of this provision to
10 Plaintiff's refund claim is quite simple: The Estate made its
11 payment on November 16, 1998 and filed its claim for refund on
12 July 30, 2002.  The Estate was granted a six month extension to
13 file, so it could look back three and half years in its refund
14 claim.  The Estate's refund claim, however, was filed more than

---

15 months from the date of the filing the claim under such section
   unless the Secretary renders a decision thereon within that time,
16 nor after the expiration of 2 years from the date of mailing by
   certified mail or registered mail by the Secretary to the taxpayer
17 of a notice of the disallowance of the part of the claim to which
   the suit or proceeding relates.")
18      In contrast, 6511(b)(2)(A) addresses the "[l]imit on the
   amount of credit or refund" that such a claim can demand, rather
19 than when a refund claim must be filed in order to be timely. 26
   U.S.C. 6511(b)(2).
20      The Government does not argue to the Court that
   Plaintiff has failed to timely file its refund claim under
21 Section 6511(a) or Section 6532(a)(1), and the Court on its
   own finds that Plaintiff has met the requirements of both.
22 Regarding Section 6511(b)(2)(A), as the discussion below
   makes clear, whether Plaintiff will be able reach any
23 overpayment paid on November 16, 1998 will depend on whether
   the Estate made an adequate informal refund claim.  It is
24 well established that an adequate informal refund claim can
   satisfy jurisdictional requirements of timely filing.  Lundy,
25 516 U.S. at 250.  Thus, accepting that Section 6511(b)(2)(A)
   creates a jurisdictional bar to Plaintiff's case, Plaintiff
26 may clear that bar with proof that the estate submitted an
   adequate informal claim, the same thing it will need to
27 prevail on the merits.

28
                                  8

1    three and a half years after its payment on November 16, 1998, so
2    the refund claim cannot reach any overpayment made at that time.
3    Def.'s Mem. at 3.

4        Plaintiff argues, however, that these are not the only two
5    relevant dates; rather, also relevant are "informal claims" for a
6    refund made by the Estate on May 13, 1999, February 11, 2002, and
7    April 25, 2002.  The three and a half year look back period of
8    should be measured from these dates, which would entitle the
9    Estate to a refund of any overpayment made on November 16, 1998.
10   Pl.'s Mem. at 2.

11       Because the Court finds that the "informal claim doctrine"
12   could apply to this case and that a reasonable jury could find, on
13   the basis of the evidence presented by Plaintiff and the evidence
14   which Plaintiff claims exists but to which it does not have
15   access, that Plaintiff made an adequate informal claim within
16   three and a half years of the Estate's November 16, 1998 payment,
17   the Court finds that there are unresolved questions of material
18   fact which preclude summary judgment at this time.

19       *Informal claim Doctrine: Basic Rule and Policy Bases*

20       In <u>United States v. Kales</u>, the Supreme Court articulated the
21   basic rule which henceforth came to be known as the "informal
22   claim doctrine":

23   > [A] notice fairly advising the Commissioner of the
24   > nature of the taxpayer's claim, which the Commissioner does not
25   > comply with formal regulations, nevertheless will be
26   > treated as a claim where formal defects and lack of
27   > specificity have been remedied by amendment filed after
28   > the lapse of the statutory period.

26   314 U.S. 186, 194 (1941); <u>see also</u> <u>Lundy</u>, 516 U.S. at 250

9

(reaffirming as a general matter "that a claim that does not comply with federal regulations might suffice to toll the limitations periods under the Tax Code.").

The Ninth Circuit Court of Appeals has cited with approval Judge Posner's discussion in BCS Fin. Corp. v. United States, 118 F.3d 522, 524-526 (7th Cir. 1997) of the two basic policy foundations for the doctrine which guide its application. Comm'r of Internal Rev. v. Ewing, 439 F.3d 1009, 1015 (9th. Cir. 2006).

The first is to provide a means for judges to "excus[e] harmless non-compliance with the formalities prescribed for refund claims by Treasury regulation," so as to prevent an "absurd rigorism" that would "make the taxpayer's utterly harmless mistake the basis for forfeiting a claim conceded to be substantively valid." Id. at 524; see also Tucker v. Alexander, 275 U.S. 228, 231 (1927) (stating that the tax code and regulations "are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial.")

The second basis(related to the quoted sentiment in Tucker above) is based on the idea of waiver. As Judge Posner explains:

> The question in an informal-claim case is when the "claim" was filed. The tax code does not say. Congress has left the question to be answered by the Treasury.

Id. at 525. The Treasury is left free to answer this question how it pleases, including by delegation to the IRS to define circumstantially in certain cases, or, in other words, to create a baseline rule that can, in certain instances, be waived. Id. Such a waiver is purely regulatory and so runs no risk of

10

1 thwarting any "legislative design," thus keeping it within the
2 bounds set by United States v. Brockamp, 519 U.S. 347 (1997) and
3 related decisions. Id.

4     Judge Posner cautions, however, that in this context
5 "[w]aiver . . . differs only a hair's breadth from estoppel," with
6 courts "us[ing] it like estoppel to prevent IRS agents from
7 lulling taxpayers into missing the three-year deadline." Id. at
8 526. Such applications of the doctrine are in tension with the
9 rule disfavoring estoppel against the government, "especially when
10 it results . . . in an unauthorized expenditure of government
11 monies," id. (citing Office of Pers. Mgmt. v. Richmond, 496 U.S.
12 414 (1990), which suggests caution in its application.

13 *Standard for Determining Adequacy of an Informal Claim*[4]

14     As might be expected, whether a taxpayer has filed an
15 adequate informal claim is by its nature an extremely contextual
16 question. Estate of Hale v. United States, 876 F.2d 1258, 1262

---

[4] While the Court is not aware of any Ninth Circuit case in which the informal claim doctrine was applied in the context of Section 6511(b)(2)(a), as opposed to Section 6511(a), its applicability in the former has been recognized in other circuits. See, e.g., Kaffenberger v. United States, 314 F.3d 944, 954-56 (8th Cir. 2003)(cited by the Ninth Circuit Court of Appeals with approval in Ewing. 439 F.3d 1009, 1015); Willis v. Dep't of Treasury, Internal Revenue Service, 848 F. Supp. 1127, 1127 (S.D.N.Y. 1994); But see, Wertz v. United States, 51 Fed.Cl. 443 (2002). Moreover, the Court notes that, regardless whether the issue arises in the context of Section 6511(a) or Section 6511(b)(2)(A), "[t]he question in an informal-claim case is when the 'claim' was filed," BCS Fin. Corp., 118 F.3d at 525, and constitutes "a gloss on the text of a Treasury regulation, specifying the form and contents of a claim for a refund," and so, in either case raises the same policy issues discussed above. Id. at 527. The Court, therefore, finds that the informal claim doctrine applies equally in the context of cases turning on Section 6511(b)(2)(A) as it does in cases turning on Section 6511(a).

(6th Cir. 1989)("A court required to determine whether an adequate informal claim has been filed should look at all the facts and circumstances."); United States v. Commercial Nat'l Bank of Peoria, 874 F.2d 1165, 1171 (7th Cir. 1989).  Indeed, at least one court has gone so far as to state "no set rules can be elucidated as to what constitutes an adequate informal claim; rather, each case must be determined based on its own unique set of facts." New England Elec. Sys. and Subsidiary Cos. v. United States, 75 AFTR2d 95-786, 95-171 (Ct. Cl. 1995).  That said, a review of cases in which courts found adequate informal claims to have been made reveals some basic contours of a standard, best summarized by the Fifth Circuit in Pala, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States, 234 F.3d 873 (5th. Cir. 2000).

   The court in Pala, as an initial matter, noted that "no 'hard and fast rules'" exist, and that whether an informal claim is adequate ultimately depends on whether under the facts constituting it, "the Commissioner knew, or should have known, that a claim was being made."  Id. at 877.  It nonetheless articulated on the basis of past decisions a basic four part test.  An informal claim is adequate if it: 1) was "filed within the statutory period;" 2) "put the IRS on notice that taxpayer believes an erroneous tax has been assessed;" 3) "describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation;" and 4) while an informal claim "may include an oral communications, it must have a written component."  Id.  Finally, "any such informal claim 'must have been followed by a formal claim which remedied any defects in the informal claim."

1  Ewing, 439 F.3d at 1015 (quoting Kaffenberger, 314 F.3d at 954).
2  In the absence of any standard articulated by the Ninth Circuit
3  Court of Appeals, the Court adopts this standard as the most
4  appropriate under the law.

*Adequacy of Written Component*

6  Before getting to the application of this standard to the
7  evidence presented by Plaintiff, there is one part of the standard
8  that bears further discussion: the adequacy of the written
9  component of an alleged informal claim. Not surprisingly, the
10 analysis again is fundamentally contextual. "[T]he proper
11 analysis should focus on whether or not in the context of a
12 particular case, a writing can be construed as a claim of a
13 right." New England Elec. Sys., 75 AFTR2d at 95-794. Further, as
14 Pala makes clear, both the written and oral components of the
15 refund claim are evaluated together as a whole to determine the
16 adequacy of the claim. Id. at 1175

17 Fortunately, however, several cases have addressed one of the
18 specific questions which faces the Court in evaluating the
19 evidence presented by Plaintiff: whether internal government
20 documents alone can suffice as the written component. The
21 consensus among them is that it can. See, e.g., BCS Fin. Corp.,
22 118 F.3d at 527 (rejecting the contention "that the doctrine is
23 never satisfied when the only written evidence of a potential
24 claim is an internal governmental document," and noting
25 hypothetically that a "strong case for application for the
26 doctrine" would be presented if "a taxpayer makes a detailed and
27 unequivocal oral claim to an IRS agent who writes it down verbatim

13

and without showing it to the taxpayer and files it as a claim for a refund."); New England Elec. Sys., 75 AFTR2d at 794 ("[W]hen oral statements of a taxpayer are documented in written form by IRS personnel, the cases suggest that the requirement of a written component is satisfied.") Tinari v. United States, 1998 WL 720156, *4 (finding that an oral refund demand which is "documented and supported by a writing that was contemporaneously generated by the Revenue Officer" is adequate.).[5]

*Plaintiff Has Presented Sufficient Evidence for Application of the Informal Claim Doctrine*

In light of the law defining the informal claim doctrine just discussed, Plaintiff has stated facts in its sworn declaration that, in combination with documentary evidence which Plaintiff states exists but to which Plaintiff has no current access, are "such that a reasonable jury could return a verdict for [Plaintiff]." Anderson, 477 U.S. at 248. Defendant denies these facts, Answer at 2, creating a genuine issue of material fact, foreclosing summary judgment.

Plaintiff states in its Declaration that on three separate occasions, following its payment of estimated taxes on November 16, 1998, the Estate's representatives contacted IRS personnel. Pl.'s Decl. at 1. Plaintiff states, specifically, that these contacts occurred by phone on May 13, 1999, February 11, 2002, and

---

[5] The Court notes that Plaintiff argues inter alia that its May 29, 2002 letter to Officer Wong might satisfy the written component of the standard. Compl. at 2. While there may be law to support this proposition, see, e.g., Tinari, 1998 WL at *6, it is not necessary to resolve for this order and has not been sufficiently briefed by either party. The Court therefore declines to rule on the issue at this time.

14

April 25, 2002, and that during each a refund claim was made on behalf of the Estate. Id. Plaintiff further states that each of these calls was "contemporaneously documented in writing by the IRS agents, in their files, both formal and informal and by computer entries." Id.

Each of these contacts was made within three and a half years of November 16, 1998, the date on which Plaintiff sent the IRS its payment. And the Court finds that based on the evidence stated by Plaintiff a reasonable jury could find that one or more of these contacts, viewed separately or as a whole in the context of the other facts which Plaintiff describes, constituted an adequate informal claim. If the jury did make such a finding, the corollary finding would be that Plaintiff made a refund claim within three and a half years of its payment of taxes, and so, under Section 6511(b)(2)(A), could demand that the Government refund any overpayment made at that time. The Government's motion for summary judgment is therefore denied without prejudice.

*Plaintiff's Arguments in the Alternative*

Plaintiff makes two other arguments in the alternative. The Court rejects both on the grounds that they are in direct contradiction with precedent binding on this Court.

Plaintiff's first argument in the alternative appears to be that because the IRS is capable of designating something as either a deposit or payment on its forms and in its other communications with taxpayers, the IRS should be bound by the designations of remittances as "unapplied credits" or "estimated" that it makes in those contexts. Pl.'s Mem. at 9. Plaintiff cites in support of

15

this contention the following statement by the Ninth Circuit Court of Appeals in <u>Zeier v. United States</u>:

> The Code explicitly provides that absent specific designation as a deposit, remittances paid at the time the return was due constitute payments "whether precisely calculated or not."

80 F.3d 1360, 1364 (9th Cir. 1996)(citations omitted).  It is unclear how or why Plaintiff believes that this language in <u>Zeier</u> supports its position, as the Court reads it to be in direct conflict of Plaintiff's position.  Referring to something as an "unapplied credit" or as an "[a]mount of estate and GST taxes estimated to be due" is not a "specific designation as a deposit." <u>Id</u>. at 1364.  Thus, under <u>Zeier</u>, remittances so labeled "constitute payments." <u>Id</u>.  The Court therefore rejects this argument of Plaintiff.

Plaintiff next urges the Court to find that Plaintiff's remittance to the IRS was a deposit rather than a payment, not  in spite of the fact that so holding would be in direct contradiction with <u>Ott v. United States</u>, 141 F.3d 1306, 1310 (9th Cir. 1998), but *because* it would be.  Pl's Mem. at 9.  Plaintiff admits the court in <u>Ott</u> held that "a remittance with a request for extension of time to file a tax return is a tax payment not a deposit," but nonetheless urges the Court to hold otherwise in this case "solely to preserve the within [sic] estate's right to appeal to the U.S. Supreme Court." <u>Id</u>.  This argument is nonsensical for several reasons, not least because Plaintiff's right to appeal a decision by the Court on this issue would depend, in the first instance, on the Court's rejecting Plaintiff's refund claim on this basis,

16

either at this stage or at trial, not the other way around. Regardless, the decisions of the Ninth Circuit Court of Appeals are binding on the Court, and the Court refuses the invitation to disobey them.  Plaintiff's argument for the Court to do so are therefore rejected.

**V.    CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment is hereby DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 26, 2006

_____
UNITED STATES DISTRICT JUDGE

17